**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
x-----------------------------------
**MICHAEL RUIZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

**Plaintiffs,**

**-against-** **JURY TRIAL DEMANDED**

**THE CITY OF NEW YORK;**
**KATHY HOCHEL, IN HER OFFICIAL CAPACITY AS GOVENOR AND INDIVIDUALLY;**
**THE CITY OF NEW YORK DEPARTMENT OF CORRECTION;**
**and HON. ALVIN BRAGG, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY AND INDIVIDUALLY,**

**Defendants.**
x-----------------------------------

## CLASS ACTION COMPLAINT

Plaintiffs Michael Ruiz and the putative class that he represents, by and through their undersigned counsel, German Rubenstein LLP, allege as follows upon information and belief as against Defendants, The City Of New York ("City"), Kathy Hochel, in her Official Capacity As Governor and Individually ("Gov. Hochel"); The City Of New York Department of Correction ("DOC"); and Hon. Alvin Bragg, in his official capacity as District Attorney and Individually ("H. Bragg" and collectively with City, Gov. Hochel, DOC, the "Defendants").

## INTRODUCTION

1. The Defendants are illegally detaining, imprisoning, and otherwise restraining pre-trial detainees, who are being held on a fugitive warrants from other states, more than thirty days after they have waived extradition,[1] without the governor signing an authorization, pursuant to CPL § 570.44, to do so.

2. Absent specific authorization from the governor, pursuant to CPL § 570.44, however, the Defendants have 30 days, from the date on which a detainee being held on a fugitive warrant signs a waiver of extradition, to either release such detainee or deliver such detainee to the demanding state.

3. Article 570 of the New York Criminal Procedure Law gives detainees being held on the fugitive warrant two options: (A) fight the extradition by demanding a governor's warrant[2] or (B) give up that fight by waiving extradition.[3]

4. CPL § 570 is a verbatim recitation of the Uniform Criminal Extradition Act and is

---

[1] New York Criminal Courts require detainees to execute written waivers of extradition outlining the legal rights being waived. Certain New York Criminal Courts, including New York County Criminal Court, use a particular pre-written form (the "Pre-Written Extradition Form") that must be signed by detainees to execute written waivers of extradition, Pre-Written Extradition Form, which illegally contains the language, "I understand that I will not be returned to the said state until such time as I have disposed of any open criminal court matters within this state." Such language illegally forces such detainees to agree not to be released to the foreign state in violation of the United States Constitution and Constitution and laws of the State of New York.

[2] The purpose of a governor's warrant is to formally authorize New York to surrender the defendant to the demanding state. Executing the Governor's warrant is New York state's way of consenting to releasing such detainee to another state. Before the governor executes the warrant, New York hasn't officially agreed to release the detainee, so the demanding state cannot come pick him up from New York.

[3] When a detainee waives extradition, the detainee is waiving his/her right to demand that governor's warrant ever be produced. The defendant is waiving the formal warrant process and consenting to go to the other state. That consent is the functional equivalent of the governor's consent. See, *People v. Frank*, 68 Misc. 3d 337, 349 (Crim. Ct. Queens County, 2020).

deigned to comply with the Constitution, U.S. Const. Art. IV, § 2, and federal law 18 USCS § 3182. CPL § 570.06, specifies that:

> Subject to the provisions of this article, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

5. Once a governor's warrant is obtained (i.e., once the legal barrier to transfer is gone), the state cannot detain someone indefinitely. Rather, "[i]f no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." 18 USCS § 3182.

6. A waiver of extradition removes the same legal barrier as the governor's warrant and, as such, due process demands that the same time frame applies whether a governor's warrant has been issued or the right to demand production of a governor's warrant is waived. *People v. Frank*, 68 Misc. 3d 337, 349 (Crim. Ct. Queens County, 2020).

7. While Article 570 does not specifically limit the hold to 30 days, it does specify that transfer to the receiving state shall occur "forthwith," which Courts have interpreted to mean "without unnecessary delay." *People v. Dingle*, 75 Misc. 3d 924, 930 (Sup. Ct. Bronx County 2022).

8. CPL § 570.50 further mandates that it is the duty of both the People and the Court to deliver the paperwork and make the transport to the receiving state occur expeditiously, within the thirty-day time period, or less, as outlined in 18 USCS § 3182.

> If and when such consent has been duly executed it shall forthwith be forwarded to the office of the secretary of state of this state and filed therein. The judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state, and shall deliver or cause to be delivered to such agent or agents a copy of such consent.

Thus, CPL 570.50 puts the onus on both the defendants to deliver the paperwork and make the transport to the receiving state occur expeditiously, within the thirty-day time period, or less, as outlined in 18 USCS § 3182.

9. The only exception to the above rule is CPL § 570.44, the statutory provision that controls persons under criminal prosecution in this state at time of requisition. Such section provides:

> If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor, in his discretion, may either surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state.

10. CPL § 570.44, however, may only be invoked upon the actual election of the governor in each specific case, based on an evaluation of the circumstances of both the open local matters and the case pending in the receiving state. *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022).

11. While there CPL 570.44 does not specify a deadline by which governor authorization must be granted or such detainees must be released, if such specific authorization has not been given within the thirty-days following a detainees execution of a waiver of extradition, a fugitive case must proceed as if such authorization does not exist, because, in that, moment it does not exist.

12. The Defendants, however, have a created and implemented a policy of ignoring such law and refusing to release the such detainees within thirty-days of their waiver of extradition, based on the governor's policy and the expectation that the governor would sign an authorization, pursuant to CPL § 570.44, if so requested, notwithstanding that such governor authorization has not been obtained.

13. As part of such policy, the various New York City District Attorneys have repeatedly sought to detain pre-trial detainees more than thirty-days after waiver of extradition, absent governor's authorization. *People v. Frank*, 68 Misc. 3d 337, 349 (Crim. Ct. Queens County, 2020) ("This Court is once again called upon to determine whether an individual being held on a fugitive warrant can be detained, after waiver of extradition, pending completion of an open, local criminal matter); *People v Wimms*, 68 Misc.3d 645 (Crim. Ct. New York County, 2020); *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022).

14. In fact, assistant district attorneys throughout New York City have represented to courts, in sum and substance, that "[i]t is established policy of the New York Governor to allow criminal prosecutions to run their course before the Governor orders extradition." *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022).

15. Defendants' policy of willfully disregarding the 30-day requirement, has the effect of remanding detainees on a New York state case, without a hearing, and without meeting any of the legal requirements to enhance or set bail on the such case.

16. Plaintiff and the putative class members now seek redress for Defendants' deprivation, under color of state law, of Plaintiff and the class members' rights, privileges, and immunities secured by the laws of the State of New York and both the United States and the New York Constitution.

17. Plaintiff and the putative class members seek: (1) declaratory judgment that detaining pre-trial detainees, being held on a fugitive warrant, more than thirty days after waiving extradition, absent explicit governor's consent, is a violation of the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. §1988, and the New York State Constitution; (2) declaratory judgment that the language in Pre-Written Extradition Form "I

understand that I will not be returned to the said state until such time as I have disposed of any open criminal court matters within this state," is a violation of the New York and United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. §1988, and the New York State Constitution; (3) an order enjoining Defendants from holding detainees on a fugitive warrant more than thirty days after the waiver of extradition without explicit authorization from the governor; (4) an order enjoining Defendants from using the Pre-Written Extradition Form with the language (or similar language) "I understand that I will not be returned to the said state until such time as I have disposed of any open criminal court matters within this state;" (5) compensatory damages for the injuries caused by Defendants' unlawful conduct; and (6) punitive damages assessed to deter such intentional or reckless deviations from well-settled constitutional law.

## JURISDICTION AND VENUE

18. This action arises under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §1983, 42 U.S.C. §1988, and the New York State Constitution.

19. The jurisdiction of this Court is predicated upon 28 U.S.C. §§1331, 1343(4), 1367, and 2201.

20. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b). The events giving rise to this claim occurred in this judicial district.

## RELEVANT PERSONS

### Plaintiffs

21. Plaintiff, Michael Ruiz ("Plaintiff" and/or "Ruiz"), is an individual residing in the City and State of New York. At all times relevant, Michael Ruiz was a pretrial detainee who was detained at Rikers Island by the New York City Department of Corrections ("DOC") and is a victim

of Defendants' unlawful conduct.

**Defendants**

22. Defendant, Kathy Hochul, is the Governor of the State of New York ("Gov. Hochul"). As governor of the State of New York, Gov. Hochul is responsible for the development, implementation, and enforcement of all policies, practices, policies, and procedures of such office. Gov. Hochul is likewise responsible for the training and supervision of personnel, and the overall administration of the Governor's facilities, actions, employees, and agents. Gov. Hochul is sued individually and in her official capacity.

23. Gov. Hochul, as governor of the State of New York, is also responsible for the development, implementation, and enforcement of all policies, practices, policies, and procedures of the of the City of New York and its various District Attorney's Offices. Gov. Hochul is likewise responsible for the training and supervision of personnel, and the overall administration of the various District Attorney Offices' facilities and actions.

24. At all times material herein, Gov. Hochul and her office, was, and is, responsible for ensuring that its personnel obeyed the Constitution and laws of the United States and the State of New York.

25. At all times material herein, Defendant, Gov. Hochul and her office, was and is responsible for ensuring that the various District Attorney's and their Offices, including all its agents and personnel, obeyed the Constitution and laws of the United States and the State of New York.

26. At all times material herein, Defendant, Gov. Hochul and her office created and implemented a policy of having attorneys at New York City various District Attorneys' Offices refuse to release class members within thirty-days of their execution of a waiver of extradition,

solely based on their expectation that Defendant, Gov. Hochul would sign an authorization, pursuant to CPL § 570.44, if so requested.

27. At all times material herein, Defendant, Gov. Hochul and her office created and implemented a policy to allow criminal prosecutions to run their course before Gov. Hochul orders extradition. See, e.g., *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022).

28. Defendant City of New York (the "City") is a municipal corporation organized and existing under the laws of the State of New York.

29. At all times relevant hereto, the City, acting through its agencies, including its various District Attorneys' Offices, was responsible for the policies, practices, supervision, implementation, and conduct that gave rise to the acts and violations of law alleged herein.

30. At all times relevant hereto, the City, acting through its agencies, was responsible for all of its District Attorney Office matters and for the appointment, training, supervision, and conduct of all District Attorney Office personnel, including all Assistant District Attorneys.

31. At all times relevant hereto, the City, acting through its agencies, including the Department of Corrections and the various District Attorneys' Offices, was responsible for the policies, practices, supervision, implementation, training, and conduct that gave rise to the acts and violations of law alleged herein.

32. A t all times material herein, the City was responsible for ensuring that its personnel obeyed the Constitution and laws of the United States and the State of New York.

33. At all times material herein, the City implemented a policy of having attorneys at New York City's its various District Attorneys' Offices refuse to release class members within thirty-days of their execution of a waiver of extradition, solely based on their expectation that, Gov. Hochul would sign an authorization, pursuant to CPL § 570.44, if so requested.

34. The City and its various District Attorneys' Offices acted as the policymaker(s) of the City and implemented such policies on behalf of the City and Gov. Huchel and trained its Assistant District Attorney's to adhere to and implement such unlawful policy. *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278 (2nd Dept. 2003).

35. At all times material herein, the City and its various District Attorneys' offices failure to train employees of the City and the various District Attorney's Office to release, absent explicit governor authorization, detainees being held on a fugitive warrant within thirty-days of their waiver of extradition, represented a deliberate choice of such persons and the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York.

36. Worse yet, the City and its Various District Attorneys' Offices affirmatively trained employees of the City and the Assistant District Attorneys not to release detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, notwithstanding the absence of the governor's authorization. This too represented a deliberate choice of the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York

37. This policy of failing to train and intentionally improperly training amounts to a policy of deliberate indifference to the need of Plaintiff and the class members.

38. Alvin Bragg, is the Manhattan District Attorney ("D.A. Bragg"). D.A. Bragg, acting in a managerial capacity, is a city policymaker for purposes of 42 U.S.C. § 1983 liability. D.A. Bragg is being sued in both his individual and official capacity.

39. As the Manhattan District Attorney, D.A. Bragg, at all times relevant hereto, was,

and is, responsible for the development, implementation, and enforcement of all policies, practices, policies, and procedures of such office. D.A. Bragg is likewise responsible for the training and supervision of personnel, and the overall administration of the Manhattan District Attorney's facilities and actions.

40. A t all times material herein, D.A. Bragg was responsible for ensuring that the Manhattan District Attorney Office's personnel obeyed the Constitution and laws of the United States and the State of New York.

41. A t all times material herein, D.A. Bragg and the Manhattan D.A.'s Office actions in failing, absent explicit governor authorization, to release detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, represented the official policy of the City and that the implementation of such policy inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York.

42. At all times material herein, D.A. Bragg and the Manhattan D.A.'s Office failure to train employees of the City and the Manhattan District Attorney's Office to release, absent explicit governor authorization, detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, represented a deliberate choice of such persons and the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York.

43. D.A. Bragg and the Manhattan D.A.'s Office affirmatively trained employees of the City and the Manhattan District Attorney's Office, not to release detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, notwithstanding the absence of the governor's authorization. This too represented a deliberate choice of such persons

and the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York.

## CLASS ALLEGATIONS

44. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following classes:

***Manhattan Class***:

*All individuals who, since May 15, 2023 are/were detained, based on the recommendation or work of the Manhattan District Attorney's Office, of the in a New York City Department of Corrections facility on a fugitive warrant more than thirty days from the date on which such detainee executed a waiver of extradition, without the express election of the Governor to hold such detainee more than thirty days.*

***New York City Class***:

*All individuals who, since May 15, 2023 are/were detained in a New York City Department of Corrections facility on a fugitive warrant more than thirty days from the date on which such detainee executed a waiver of extradition, without the express election of the Governor to hold such detainee more than thirty days.*

45. The members of the classes are so numerous as to render joinder impracticable.

46. Upon information and belief, there were, are, and continue to be dozens (or more) of pre-trial detainees being held on a fugitive warrant more than thirty days from the execution of a waiver of extradition, without the express consent of the Governor.

47. The questions of law and fact common to the classes include whether a) the Defendants, individually and collectively, had a policy of holding pre-trial detainees on a fugitive warrant more than thirty days from the waiver of extradition without the express consent of the Governor b) whether holding pre-trial detainees on a fugitive warrant more than thirty days from the waiver of extradition without the express consent of the Governor is a violation of the class members rights under the United States Constitution and New York State Constitution, c) whether

the use of the Pre-Written Extradition Form violates the United States Constitution and Constitution and laws of the State of New York, and d) whether the Defendants, individually and collectively, failed to properly train their respective personnel.

48. The named Plaintiff is adequate representatives of the classes. The violations of law alleged by the named Plaintiff stem from the same course of conduct by Defendants that violated and continue to violate the rights of members of the putative class. Moreover, the legal theory under which the named Plaintiff seeks relief is the same or similar to that on which the putative class members will rely. Moreover, the harm suffered by the named Plaintiff is typical of the harm suffered by the absent putative class members. The named Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the putative class members. In addition, the names Plaintiff was detained more than 30 days after waiving extradition at the insistence of the Manhattan District Attorney's Office.

49. The named Plaintiff is represented by German Rubenstein LLP who has extensive class action experience, as well as experience in civil rights litigation. German Rubenstein has litigated a variety of actions against governmental entities and their employees, including cases alleging illegal strip searches of pre-trial detainees, illegally denying outdoor recreation to pre-trial detainees housed at certain facilities in Riker's Island, police misconduct and sexual force. German Rubenstein LLP has the resources, expertise, and experience to prosecute this action. Counsel for Plaintiffs know of no conflicts among members of the putative class or between the firms and members of the putative class.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because (a) the prosecution of dozens, if not hundreds, of separate actions would be inefficient and wasteful of legal resources; (b) the issues raised can be more fairly

and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (c) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (d) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants, which would establish incompatible standards of conduct for Defendants; (e) Defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (f) questions of law and/or fact common to members of the class predominate over any questions that affect individual members.

## FACTS

51. On March 22, 2024, Plaintiff, Michael Ruiz, was arrested in New York County on a fugitive warrant.

52. On March 23, 2024, Ruiz was arraigned (the "Arraignment") in criminal court on Fugitive Complaint FG-300121-24NY arising from an open case in the state of New Jersey.

53. On the date of the Arraignment, Ruiz had an open Brooklyn indictment - IND-75873-22 (the "Brooklyn Indictment"), which previously had an initial supreme court appearance of November 30, 2022, on which date Ruiz was released on bail.

54. Since he was released on November 30, 2022 on Brooklyn Indictment, Ruiz had made over ten court appearances, including a two-day suppression hearing, with respect to such matter.

55. Prior to the Arraignment, Ruiz had reserved his right to go to trial on the Brooklyn Indictment and had not entered a plea. At the arraignment on the fugitive warrant, the Brooklyn Indictment was in a trial posture.

56. At the Arraignment, Ruiz was remanded. Upon being remanded, Ruiz did not immediately waive extradition. Rather, Ruiz waived extradition on April 24, 2024 in 100 Centre Street Part 19.

57. On April 16, 2024, Nicole Guliano, Esq. was assigned as defense counsel, and Ruiz's prior defense counsel was relieved. On that same day, ADA Goodman informed Ms. Guliano that regardless of Mr. Ruiz's execution of a waiver, the People intended to hold Mr. Ruiz indefinitely on the fugitive hold, while the open Brooklyn county cases were pending. ADA Goodman asserted that CPL § 570.44 gives the Manhattan D.A.'s Office the authority to hold Mr. Ruiz. [Exhibit A]

58. When ADA Goodman made this statement, the Manhattan District Attorney's Office had not attempted to obtain the governors authorization to hold Ruiz more than thirty days. *Id*.

59. On April 24, 2024, Ruiz executed the waiver of extradition, utilizing the Pre-Written Extradition Form, over defense counsel's objection, as this was the only means available for Mr. Ruiz to waive extradition. At the time of execution, through his attorney, Mr. Ruiz expressly objected to the inappropriate language contained on the form regarding his detention until local matters are reserved and specifically refused consent to be held pursuant to CPL § 570.44. *Id*.

60. On May 7, 2024, Mr. Ruiz's defense counsel, Nicole Guliano, called the Atlantic City Sheriff's Department. *Id*. Officers at the Atlantic City Sheriff's Department informed counsel that they had received the executed waiver. Atlantic City Officers further stated that they desired to extradite Mr. Ruiz, however, they have not received release authority from New York County District Attorney's Office or the Court to do so. *Id*.

61. That same day, Mr. Ruiz's counsel called ADA Goodman, who again confirmed that it was the intent of the Manhattan District Attorney's Office to continue to enforce a hold on Mr. Ruiz until the completion of the prosecution of his current open Brooklyn matter. *Id*.

62. Mr. Ruiz made the Manhattan District Attorney's Office aware of his position and his intent to seek release on the 30th day following his waiver. *Id*.

63. When ADA Goodman made this statement, the Manhattan District Attorney's Office had not attempted to obtain the governors authorization to hold Ruiz.

64. On May 28, 2024, ADA Goodman made a record in New York County Criminal Court Part 19, indicating that they were in the process of obtaining CPL 570.44 authorization from the governor, which, upon information and belief, was expected to take 1-2 weeks. *Id*.

65. On June 4, 2024, 42 days after the Mr. Ruiz's waiver of extradition, the People obtained a signed authorization from Governor Hochul. *Id*. It was an abuse of discretion on behalf of Defendants to seek, and for Governor Hochul to issue, such order more than 30 days after a waiver of extradition, at a point in time when the defendant's release was mandatory under the law.

66. Mr. Ruiz sat in jail for forty-two days after he executed a waiver of extradition. The CPL 570.44 authorization obtained on June 4, 2024, was untimely and moot, as the Ruiz was already required by law to be released 10 days prior.

**AS AND FOR A FIRST CAUSE OF ACTION**
**False/Prolonged Imprisonment and Deprivation of Liberty Without Due Process of Law**
**14th Amendment — 42 U.S.C. § 1983**
**(Against All Defendants)**

67. Plaintiff repeats, realleges, and incorporates by reference all of the preceding paragraphs.

68. The Fourteenth Amendment to the United States Constitution guarantees that no

person shall be deprived of liberty without due process of law.

69. Following an individual's waiver of extradition, such individual cannot be held more than 30 days, absent specific governor authorization. Defendants, however, jointly and severally, implemented, promulgated, and continued to enforce and effectuate a policy, practice, procedure, and/or custom, without regulatory and/or legal justification, pursuant to which the named Plaintiff and the putative class members were, or will be, detained on a fugitive warrant, more than 30 days after waiver of extradition, without Defendants obtaining CPL § 570.44 authorization from the Governor.

70. By implementing, promulgating, and continuing to enforce and effectuate a policy, practice, procedure, and/or custom to hold Ruiz and the class members more than thirty-days after the waiver of extradition, absent the governor's authorization, Defendants, acting under color of state law, deprived Plaintiff and the class members of his/her/their liberty, without due process and in violation of such person's rights pursuant to the New York and United States Constitution.

71. Moreover, obtaining governor authorization after the expiration of thirty-day period is untimely and void as a matter of law and does not serve as retroactive justification for the unlawful preceding detention.

72. By improperly training and/or failing to adequately train, investigate, discipline, and/or supervise their respective subordinates, including the various New York City District Attorneys and Assistant District Attorneys, to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees because the need to act is so obvious and the inadequacy of current practices is so likely to result in a deprivation of rights, Defendants have deprived, and will continue to deprive, Plaintiff and each and every class member of rights, remedies, privileges, and immunities guaranteed by the Constitution of the

United States and the State of New York.

73. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and putative class member have suffered and continues to suffer pain, suffering, mental anguish, and a deprivation of their Constitutional rights under the laws of the United States and the State of New York.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Wrongful Continued/Prolonged Detention – 8th Amendment- 42 U.S.C. § 1983**
**(Against All Defendants)**

74. Plaintiff and the class members repeat, reallege, and incorporate by reference all of the preceding paragraphs.

75. The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain," including punishments that are "totally without penological justification." *Gregg v. Georgia*, 428 U.S. 153, 173, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

76. "Next to bodily security, freedom of choice and movement has the highest place in the spectrum of values recognized by our Constitution." *Hurd v Fredenburgh*, 984 F.3d 1075 (2nd Cir. 2021) quoting *Sample v. Diecks*, 885 F.2d 1099, 1108, 1109 (3d Cir. 1989). Thus, "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis." *Id*.

77. Defendants, jointly and severally, knew that following a class members' execution of a waiver of extradition, such class member cannot be held more than 30 days, absent specific governor authorization.

78. By holding detainees being held on a fugitive warrant more than thirty-days after the waiver of extradition, absent the governor's authorization, Defendants, jointly and severally, and acting under color of state law, deprived such class members of his/her liberty, without due

process and in violation of such person's rights pursuant to the New York and United States Constitution. Moreover, obtaining governor authorization after the expiration of thirty-day period is untimely and void as a matter of law and does not serve as retroactive justification for the unlawful detention that preceded it.

79. Defendants knew, or reasonably should have known, they were only permitted to detain Plaintiff and the class members thirty-days following their waiver of extradition, absent specific governor authorization, and that continued detention beyond such thirty-day period, absent governor authorization, was a violation of their constitutional rights.

80. Defendants' deprived Plaintiff and the class members of their liberty, without due process and in violation of his/their rights pursuant to the New York and United States Constitution, by continuing to detain him/them beyond thirty days on a fugitive warrant after execution of a waiver of extradition, pursuant to Defendants unlawful stated policy, without any lawful authority, and in deliberate disregard of and deliberate indifference to Plaintiff and the class members' clearly established constitutional rights.

81. By implementing, promulgating, and continuing to enforce and effectuate a policy, practice, procedure, and/or custom pursuant to which Plaintiff and the putative class members were, or will be, detained on a fugitive warrant, more than 30 days after waiver of extradition, without obtaining governor authorization pursuant to CPL § 570.44, and/or by improperly training and/or failing to adequately train, investigate, discipline, and/or supervise their respective subordinates and agents to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees, Defendants have deprived and will continue to deprive each and every Plaintiff and putative class member of rights, remedies, privileges, and immunities guaranteed by the Constitution of the United States.

82. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and putative class member have suffered and continue to suffer pain, suffering, mental anguish, and a deprivation of their Constitutional rights under the laws of the United States and the State of New York.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Wrongful Continued/Prolonged Detention – 4th Amendment- 42 U.S.C. § 1983**
**(Against All Defendants)**

83. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

84. The Fourth Amendment to the United States Constitution protects individuals from unreasonable seizures, which includes the unlawful detention and unlawful continued detention. *Manuel v. City of* Joliet, 580 U.S. 357 (2017).

85. Defendants knew that following a class members' execution of a waiver of extradition, such class member cannot be held more than 30 days, absent specific governor authorization.

86. By holding detainees being held on a fugitive warrant more than thirty-days after the waiver of extradition, absent the governor's authorization, Defendants, acting under color of state law, unreasonably seized and deprived such class members of his/her liberty, without due process and in violation of such person's rights pursuant to the New York and United States Constitution. Moreover, obtaining governor authorization after the expiration of thirty-day period is untimely and void as a matter of law and does not serve as retroactive justification for the unlawful detention that preceded it.

87. Defendants knew, or reasonably should have known, that Plaintiff and the class members executed a waiver of extradition, the thirty-day statutory hold had expired without

governor's authorization, and that the continued detention beyond such thirty-day period, absent governor authorization, was without lawful authority.

88. Defendants' deprived Plaintiff and the class members of their liberty, without due process and in violation of his rights pursuant to the New York and United States Constitution, by continuing to seize and detain him/them beyond thirty days on a fugitive warrant after execution of a waiver of extradition, pursuant to Defendants unlawful stated policy, without any lawful authority, and in deliberate disregard of and deliberate indifference to Plaintiff and the class members' clearly established constitutional rights.

89. By implementing, promulgating, and continuing to enforce and effectuate a policy, practice, procedure, and/or custom pursuant to which the named Plaintiff and the putative class members were or will be detained on a fugitive warrant, more than 30 days after waiver of extradition, without obtaining CPL § 570.44 authorization, and/or by improperly training and/or failing to adequately train, investigate, discipline, and/or supervise their respective subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees, Defendants have deprived and will continue to deprive each and every Plaintiff and putative class member of rights, remedies, privileges, and immunities guaranteed by the Constitution of the United States.

90. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and putative class member have suffered and continues to suffer pain, suffering, mental anguish, and a deprivation of their Constitutional rights under the laws of the United States and the State of New York.

## AS AND FOR A FOURTH CAUSE OF ACTION
**Malicious Prosecution Pursuant to 4th Amendment and 42 U.S.C. § 1983**
**(Against All Defendants)**

91. Throughout the class period, each of Ruiz and the class members was arraigned in a criminal court in the City of New York on a fugitive Complaint arising from an open case in another state.

92. On the date of Ruiz and each class members' arraignment, each respective class member had an open New York City indictment for which such class member was not being detained.

93. At the arraignment for the fugitive Compliant or sometime thereafter, each class member waived extradition.

94. After waiving extradition, Plaintiff and each class member was detained more that thirty-days, absent governor's authorization, in deprivation of their rights, liberties, remedies, privileges, and immunities guaranteed by the Constitution of the United States and the State of New York.

95. Defendants knew that following a class members' execution of a waiver of extradition, such class member cannot be held more than 30 days, absent specific governor authorization. Defendants, however, intentionally held Plaintiff and the class members more than thirty-days after their waiver of extradition, absent the governor's authorization, in order to maintain coercive leverage over their pending local prosecutions and the foreign state's claim ended without a conviction or even prosecution in New York.

96. By holding detainees being held on a fugitive warrant more than thirty-days after the waiver of extradition, absent the governor's authorization, Defendants, acting under color of state law, deprived such class members of his/her liberty, without due process and in violation of such person's rights pursuant to the New York and United States Constitution.

97. By implementing, promulgating, and continuing to enforce and effectuate a policy,

practice, procedure, and/or custom pursuant to which the named Plaintiff and the putative class members were or will be detained on a fugitive warrant, more than 30 days after waiver of extradition, without obtaining CPL § 570.44 authorization, and/or by improperly training and/or failing to adequately train, investigate, discipline, and/or supervise their respective subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with their employees, Defendants have deprived and will continue to deprive each and every Plaintiff and putative class member of rights, remedies, privileges, and immunities guaranteed by the Constitution of the United States.

98. As a direct and proximate result of the malicious prosecution, misconduct, and abuse of authority detailed above, Plaintiff and putative class member have suffered and continues to suffer pain, suffering, mental anguish, and a deprivation of their Constitutional rights under the laws of the United States and the State of New York.

## AS AND FOR A FIFTH CAUSE OF ACTION

### False Imprisonment - 42 U.S.C. § 1983
***(Against All Defendants)***

99. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

100. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678 (2001).

101. Defendants intended to, and did, confine plaintiff and the putative class members, more than thirty-days after the waiver of extradition without explicit authority of the Governor.

102. Plaintiff and the class members were conscious of such confinement and in fact Ruiz, by his defense counsel, complained of, and objected to, such confinement.

103. Absent explicit authority by the Governor, the confinement of plaintiff and the class members more that the thirty days after waiver of extradition was not privileged. *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278, 284-85 (2nd Dept. 2003).

104. Any authorization after the thirty day period had expired was untimely and void.

105. The Defendants, jointly and severally, maintained an official policy, procedure, and custom of imprisoning, beyond the legally permitted 30-day period, pre-trial detainees being held on fugitive warrants who had executed waivers of extradition, using the prospect of a CPL § 570.44 governor's authorization as a pretext, in order to maintain coercive leverage over pending local prosecutions.

106. In addition to implementing such policy, the Defendants also failed to adequately train and supervise, and in fact did mis-train and mismanage, its prosecutors and personnel with respect to the legal requirements governing post-waiver detention and prosecution in fugitive proceedings, including the 30-day time limit established by 18 U.S.C. § 3182 and CPL § 570.50.

107. Both the Defendants' implementation of this policy and their failure to train their employees deprived Plaintiff and the putative class members of his/their liberty, without due process and in violation of his rights pursuant to the New York and United States Constitution by continuing to detain him/them beyond thirty-days, pursuant to Defendants unlawful stated policy, without any lawful authority, and in deliberate disregard of Plaintiff and the putative class members' clearly established rights. The Defendants deliberately made such choice not to train their employees and the employees of the various district attorneys' offices in their obligation to release detainees being held on a fugitive warrant within thirty-days of waiving extradition absent the governor's authorization.

108. As a direct and proximate result of the misconduct and abuse of authority detailed

above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Abuse of Process – 14th Amendment Due Process - 42 U.S.C. § 1983**
***(Against All Defendants)***

109. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

110. The issuance of a fugitive complaint, specifically FG-300121-24NY with respect to Plaintiff, constitutes regularly issued process.

111. The purpose of temporarily detaining a detainee on a fugitive warrant is to allow the demanding state to perfect its extradition process and to facilitate the orderly transfer of the detainee to the demanding state. The process is time-limited, because open-ended detention is unlawful and does not facilitate the purpose of the detention.

112. By detaining Plaintiff and the class members more than thirty-days without explicit governor authorization, the detention is no longer being used to facilitate its intended purpose, because (A) no active extradition is being facilitated by such detention and the detention has, therefore, become an end in itself, (B) the Defendants are using process as a general detention device untethered from any extradition purpose, (C) the Defendants are detaining class members indefinitely under cover of an extradition framework that has effectively been abandoned.

113. Defendants also used this regularly issued process in a perverted manner of maintaining coercive leverage over Plaintiff and the class members' separate New York state prosecution and pressuring a favorable resolution therein. *People v. Frank*, 68 Misc. 3d 337, 349 (Crim. Ct. Queens County, 2020) ("This Court is once again called upon to determine whether an individual being held on a fugitive warrant can be detained, after waiver of extradition, pending

completion of an open, local criminal matter); *People v Wimms*, 68 Misc.3d 645 (Crim. Ct. New York County, 2020); *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022).

114. ADA Goodman's April 16, 2024 statement constitutes direct evidence that Defendants intended to use the fugitive process for a purpose other than its intended one — specifically, to keep Plaintiff imprisoned to coerce a plea or disadvantage his trial preparation in the Brooklyn matter. See also, *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022) ("It is established policy of the New York Governor to allow criminal prosecutions to run their course before the Governor orders extradition.").

115. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>**
**Monell Liability — Unconstitutional Policy and Custom 42 U.S.C. § 1983**
***(Against the City of New York)***

116. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

117. DA Bragg and the various New York City District Attorneys acting in a managerial capacity, constitute policymakers for the City of New York for purposes of 42 U.S.C. § 1983 liability. *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278 (2d Dep't 2003); *Garcia v. City of New York*, 2007 WL 2844864 (S.D.N.Y. 2007); *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).

118. The City itself and acting through its various District Attorneys' Offices, maintained an official policy, procedure, and custom of holding, detaining, seizing, and restraining, beyond the legally required 30-day period, pre-trial detainees being held on fugitive

warrants who had executed waivers of extradition, using the prospect of a CPL § 570.44 governor's authorization as a pretext, in order to maintain coercive leverage over pending local prosecutions.

119. This policy was explicitly stated on the record by ADA Goodman on April 16, 2024, and was reiterated on May 7, 2024, and May 28, 2024, demonstrating that it was not the isolated decision of one employee but a deliberate, institution-wide policy, practice, and decision.

120. The decision to appear in court and argue for continued detention beyond the mandatory release date is not the decision of a line ADA acting alone; it is an institutional position made with supervisory knowledge and approval and has repeatedly been done by Assistant District Attorneys in New York City.

121. Consistent therewith, this policy was not executed and applied to Ruiz alone but with respect to dozens if not hundreds of other pre-trail detainees being held on fugitive warrants after executing a waiver of extradition. See, e.g., *People v Dingle*, *75* Misc. 3d 924 (Crim. Ct. Bronx County, 2022) ("It is established policy of the New York Governor to allow criminal prosecutions to run their course before the Governor orders extradition."); *People v. Frank*, 68 Misc. 3d 337, 349 (Crim. Ct. Queens County, 2020); *People v Wimms*, 68 Misc.3d 645 (Crim. Ct. New York County, 2020).

122. At all times material herein, The City and its various District Attorneys' offices not only failed to take any steps to remedy the ongoing constitutional violation, but also failed to train employees of the City and the various District Attorney's Office to release, absent explicit governor authorization, detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, represented a deliberate choice of such persons and the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York.

123. Worse yet, the City and its Various District Attorneys' Offices affirmatively trained employees of the City and the Assistant District Attorneys not to release detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, notwithstanding the absence of the governor's authorization. This too represented a deliberate choice of the City and inflicted the injury on Plaintiff and the class members for which the City is responsible under the Constitution and laws of the United States and the State of New York

124. Both the Defendants' implementation of this policy and their failure to train their employees deprived Plaintiff and the putative class members of his/their liberty, without due process and in violation of his rights pursuant to the New York and United States Constitution by continuing to detain him/them beyond thirty-days, pursuant to Defendants unlawful stated policy, without any lawful authority, and in deliberate disregard of Plaintiff and the putative class members' clearly established rights. The Defendants deliberately made such choice to mis-train and/or not to train their employees and the employees of the New York City District Attorneys' Offices in their obligation to release detainees being held on a fugitive warrant within thirty-days of waiving extradition absent the governor's authorization.

125. Both the implementation of this policy and this failure to train constitutes deliberate indifference to the constitutional rights of such detainees, because: (a) Defendants know with moral certainty that Assistant District Attorneys will handle fugitive matters and make detention decisions in such cases; (b) those decisions present issues concerning constitutional limits that training would clarify; and (c) the implementation of an incorrect policy and practice — as occurred here — will, and did, frequently deprive such detainees of their constitutional liberty rights. *Walker v City of New York*, 974 F2d 293 [1992], cert denied 507 US 961, 972 [1993]); *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278 (2nd Dept. 2003).

126. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**AS AND FOR A EIGTH CAUSE OF ACTION**
**Supervisor Liability - 42 U.S.C. § 1983**
***(Against DA Bragg in his Individual Capacity)***

127. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

128. The various New York City District Attorneys acting in a managerial capacity, constitute policymakers for the City of New York for purposes of 42 U.S.C. § 1983 liability. *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).

129. As the elected District Attorney of the Manhattan, DA Bragg is the final policymakers for their respective District Attorney's Office in its managerial capacity. *Walker v. City of New York*, 974 F.2d 293 (2nd Cir. 1992).

130. DA Bragg and each such District Attorney is therefore responsible for the policies, training, and supervision of all personnel in his/her office, including the policies governing the handling of extradition and fugitive matters.

131. The City, through its various District Attorneys' Offices, maintained an official policy, procedure, and custom of holding and prosecuting, beyond the legally required 30-day period, pre-trial detainees being held on fugitive warrants who had executed waivers of extradition, using the prospect of a CPL § 570.44 governor's authorization as a pretext, in order to maintain coercive leverage over pending local prosecutions.

132. Each District Attorney either personally created the policy of using fugitive holds beyond the statutory 30-day post-waiver period as a coercive tool in local prosecutions, or inherited

and ratified such a policy from prior administrations by continuing and enforcing it. In either case, each such District Attorney either directly participated in and/or created the unconstitutional policy under which Plaintiff and the class member's unlawful detention occurred.

133. The City, through its various DA Bragg, maintained an official policy, procedure, and custom of holding individuals being prosecuted in Manhattan Criminal Court, beyond the legally required 30-day period, pre-trial detainees being held on fugitive warrants who had executed waivers of extradition, using the prospect of a CPL § 570.44 governor's authorization as a pretext, in order to maintain coercive leverage over pending local prosecutions.

134. DA Bragg either personally created the policy of using fugitive holds beyond the statutory 30-day post-waiver period as a coercive tool in local prosecutions, or inherited and ratified such a policy from prior administrations by continuing and enforcing it. In either case, each such DA Bragg either directly participated in and/or created the unconstitutional policy under which Plaintiff and the class member's unlawful detention occurred.

135. At all times material herein, the various DA Bragg and the District Attorneys' failure to train employees of the City and their respective District Attorney's Office to release, absent explicit governor authorization, detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, represented a deliberate choice of such persons and inflicted the injury on Plaintiff and the class members for which each such District Attorney is responsible under the Constitution and laws of the United States and the State of New York.

136. DA Bragg and the various District Attorneys' affirmatively trained employees of the City and the Assistant District Attorneys in their respective offices not to release detainees being held on a fugitive warrant within thirty-days of executing a waiver of extradition, notwithstanding the absence of the governor's authorization. This too represented a deliberate

choice of each respective District Attorney and inflicted the injury on Plaintiff and the class members for which each District Attorney, respectively, is responsible under the Constitution and laws of the United States and the State of New York.

137. The need for such training is not merely foreseeable — it is certain, given that fugitive matters involving pending local cases arise regularly in New York City, and the legal framework governing the 30-day post-waiver release obligation has been clearly established by a consistent body of New York case law since at least 2020.

138. The legal question of when and whether a pre-trial detainee may be held beyond the 30-day post-waiver period presents precisely the kind of difficult choice that training would clarify, and the pattern of decisions in New York, Queens, Bronx, and Kings County courts shows a history of Assistant District Attorneys mishandling this situation. Moreover, training with respect to these situations make decisions by Assistant District Attorneys less difficult and correct a history of employees mishandling it preventing his employees that ultimately deprives citizens of their constitutional rights. See e.g., *Walker v. City of New York*, 974 F.2d at 297-298.

139. This policy of failing to train and intentionally improperly training amounts to a policy of deliberate indifference to the need of Plaintiff and the class members and was the proximate cause of Plaintiff and the class members' unlawful detention beyond the date on which the law mandated release. This detention deprived Plaintiff and the class members of their liberty without due process of law in violation of the New York and United States Constitution.

140. Despite this knowledge, the various District Attorneys' failed to take any steps to remedy the ongoing constitutional violation. They did not direct ADA Goodman or other personnel to arrange for Plaintiff's immediate release. Instead, they actively continued and defended the unlawful detention.

141. This failure to remedy a known constitutional violation after learning of it constitutes a separate, independent basis for supervisory liability against each District Attorney, respectively.

142. As a direct and proximate result of this failure, Plaintiff remained unlawfully detained from the date supervisory officials learned of the violation through the date of his eventual release, suffering the injuries set forth herein.

**<u>AS AND FOR A NINTH CAUSE OF ACTION</u>**

**Violation of Civil Rights Under New York Civil Rights Law § 8**
***(Against All Defendants)***

143. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

144. New York Civil Rights Law § 8 provides a cause of action for the violation of rights guaranteed by the New York State Constitution, including the right to liberty and due process.

145. Defendants' conduct as alleged herein violated Plaintiff's rights under Article I, §6, of the New York State Constitution, entitling Plaintiff to damages under New York Civil Rights Law § 8.

146. Article 1, § 6 provides that no person shall be deprived of life, liberty, or property without due process and is independent of the federal Due Process Clause. Substantive due process under Article I, § 6 protects against government deprivations of liberty that are arbitrary, oppressive, or shocking to the conscience — regardless of what process is provided.

147. The New York Court of Appeals has recognized that freedom from physical restraint is among the most fundamental liberty interests protected by Article I, § 6. In *Rivers v. Katz*, 67 N.Y.2d 485 (1986), the court held: Liberty interests under Article I, § 6 are of the highest

constitutional order, deprivations of physical liberty require the most demanding justification, and the State bears the burden of demonstrating that any liberty deprivation serves a compelling governmental interest.

148. Detaining pre-trail detainees on fugitive warrants more than thirty-days after waiver of extradition, without governor authorization, has no regulatory justification, has no legitimate purpose in connection with extradition, and the length of detention bears no rational relationship to any extradition goal.

149. Such pro-longed and unlawful detention therefore becomes de facto punitive — a form of punishment imposed without conviction, which violates Article I, § 6's substantive due process guarantee,

150. Thus, Defendants deprived Plaintiff and the putative class members of his/their liberty without due process in violation of the New York State Constitution by detaining him/them, more than thirty days after executing of a waiver of extradition pursuant to an unlawful policy, without legal authority, and in deliberate disregard of established New York law.

151. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(Substantive and Procedural Due Process Claims**
**Pursuant to the New York State Constitution, Article 1, § 6)**
**(Against the City of New York)**

152. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

153. Article I, Section 6 of the New York State Constitution guarantees that no person shall be deprived of life, liberty or property without due process of law.

154. Plaintiff and the putative class members have a clearly established right under New York law to be released from custody no later than thirty days after executing of a waiver of extradition.

155. Defendants deprived Plaintiff and the putative class members of his/their liberty without due process in violation of the New York State Constitution by detaining him/them, more than thirty days after executing of a waiver of extradition pursuant to an unlawful policy, without legal authority, and in deliberate disregard of established New York law.

156. Detention beyond thirty-days absent explicit governor authority exceeds statutory authority. It is not supported by any ongoing judicial determination of necessity, serves no legitimate governmental purpose with respect to the extradition process.

157. Defendants' conduct was not inadvertent but was, in effect, a policy of deliberate indifference to the rights of Plaintiff and putative class members.

158. The City's failure to implement a tracking systems for the 30-day deadline, automatically notify courts and the New York City Department of Corrections when the deadline expires, implement procedures for bringing detainees held thirty-days after waiver of extradition before a court for discharge constitutes a failure to provide the minimum procedural protections Article I, § 6 requires before continued detention.

159. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**AS AND FOR A ELEVENTH CAUSE OF ACTION**
**(Claims Pursuant to the New York State Constitution, Article 1, § 12)**
**(Against the City of New York)**

160. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding

paragraphs.

161. Article I, Section 12 of the New York State Constitution guarantees the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. It is independent from the Fourth Amendment of the United States Constitution.

162. Plaintiff and the putative class members have a clearly established right under New York law to be released from custody no later than thirty days after executing of a waiver of extradition.

163. The City deprived Plaintiff and the putative class members of his/their liberty without due process in violation of the New York State Constitution by unreasonably detaining, restraining, seizing, and holding him/them, more than thirty days after executing of a waiver of extradition pursuant to an unlawful policy, without legal authority, and in deliberate disregard of established New York law.

164. The untimely CPL § 570.44 authorization issued after the 30 days following the waiver of extradition expired, does not cure this violation, as unconstitutional deprivation of liberty cannot be cannot retroactively cured.

165. ADA Goodman's statement on April 16, 2024 — reflecting a deliberate, institution-wide policy of post-waiver indefinite detention — is direct evidence that this failure to train was not inadvertent but was, in effect, a policy of deliberate indifference to the rights of Plaintiff and and the class members' position.

166. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

**AS AND FOR A TWELTH CAUSE OF ACTION**
***(Injunctive Relief Against All Defendants)***

167. Plaintiffs repeat, reallege, and incorporate by reference all of the preceding paragraphs.

168. The Defendants, jointly and severally, each maintained an official policy, procedure, and custom of restraining, detaining, and holding, beyond the legally permitted 30-day period without governor's explicit consent, pre-trial detainees being held on fugitive warrants who had executed waivers of extradition.

169. The Defendants' implementation of this policy and their respective failure to train their employees deprived Plaintiff and the putative class members of his/their liberty, without due process and in violation of his rights pursuant to the New York and United States Constitution by continuing to detain him/them beyond thirty-days, pursuant to Defendants unlawful stated policy, without any lawful authority, and in deliberate disregard of Plaintiff and the putative class members' clearly established rights.

170. As a direct and proximate result of the Defendants' misconduct and abuse of authority detailed above, each and every Plaintiff and putative class member has suffered and continues to suffer psychological pain and mental anguish.

171. If detaining, without explicit authorization of the Governor, pre-trail detainees being held on a fugitive warrant more than thirty-days after execution of a waiver of extradition is not enjoined, and/or if Defendants' failure to provide adequate training and/or supervision to subordinates is not enjoined, Plaintiff and class members may be subject to immediate and irreparable injury for which no adequate remedy at law exists because they are likely to suffer continued violations of their rights under the law of the State of New York and the New York and United States Constitution.

172. If the Defendants' policy, practice, and/or custom of using the Pre-Written

Extradition Form to execute written waivers of extradition, which illegally contains the language, "I understand that I will not be returned to the said state until such time as I have disposed of any open criminal court matters within this state" is not enjoined, and/or if City's failure to provide adequate training and/or supervision to subordinates is not enjoined, Plaintiff and class members may be subject to immediate and irreparable injury for which no adequate remedy at law exists because they are likely to suffer continued violations of their rights under the law of the State of New York and the New York and United States Constitution.

## **PRAYER FOR RELIEF**

173. WHEREFORE, Plaintiffs ask this Court:

a. To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and b(2) and b(3) for the class as described herein and naming Plaintiffs herein as the class representatives as counsel as class counsel.

b. To enter a judgment declaring unconstitutional Defendants' policy, practice, and/or custom of detaining, without explicit authorization of the Governor, pre-trail detainees being held on a fugitive warrant more than thirty-days after execution of a waiver of extradition.

c. To enter a judgment declaring unconstitutional Defendants' policy, practice, and/or custom of using the Pre-Written Extradition Form to execute written waivers of extradition, which contains the language "I understand that I will not be returned to the said state until such time as I have disposed of any open criminal court matters within this state."

d. To enter a judgment declaring unconstitutional Defendants' failure to provide adequate training and/or supervision to subordinates.

e. To issue an order enjoining Defendants from implementing or enforcing the aforesaid unconstitutional policy, practice, and/or custom, and/or enjoining Defendants to provide adequate training and/or supervision to subordinates.

f. To award Plaintiffs and members of the class compensatory damages in an amount to be determined at trial, plus prejudgment interest.

g. To award Plaintiffs and members of the class punitive damages against all Defendants, in an amount to be determined at trial, plus prejudgment interest.

h. To award Plaintiffs and members of the class reasonable attorneys' fees and costs under 42 U.S.C. §§ 1988 and 1920.

i. To grant such other and further relief to Plaintiffs and members of the class as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
May 14, 2026

**GERMAN RUBENSTEIN LLP**

By: /s/ Joel M. Rubenstein

Joel M. Rubenstein, Esq.
GERMAN RUBENSTEIN LLP
Attorneys for Plaintiffs and the Class
19 West 44th Street, Suite 1500
New York, New York 10036
(212) 704-2020